UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 22-60026-KMM/SNOW

OMEGA SA, BLANCPAIN SA,
COMPAGNIE DES MONTRES
LONGINES, FRANCILLON S.A.,
GLASHUTTER UHRENBETRIEB
GMBH, HAMILTON
INTERNATIONAL AG, RADO
UHREN AG, TISSOT SA, CERTINA
AG, and MIDO AG,

       Plaintiffs,

v.

THE INDIVIDUALS, BUSINESS
ENTITIES, AND UNINCORPORATED
ASSOCIATIONS IDENTIFIED ON
SCHEDULE "A",

       Defendants.

_____/

## REPORT AND RECOMMENDATION

THIS CAUSE is before the Court upon Plaintiffs Omega SA ("Omega"),

Blancpain SA ("Blancpain"), Compagnie des Montres Longines, Francillon S.A.

("Longines"), Glashütter Uhrenbetrieb GmbH ("Glashütter"), Hamilton

International AG ("Hamilton"), Montres Breguet S.A. ("Breguet"), Rado Uhren AG

("Rado"), Tissot SA ("Tissot"), Certina AG ("Certina"), and Mido AG's ("Mido")

(collectively, "Plaintiffs") Motion for Preliminary Injunction ("Motion") (ECF No. 8),

which was referred to United States Magistrate Judge Lurana S. Snow (ECF No.

12) for a Report and Recommendation. The undersigned has carefully considered

the Motion, the record in the case, and the applicable law, and is otherwise fully advised.   By the instant Motion, Plaintiffs move for an entry of preliminary injunction against Defendants, the Individuals, Business Entities, and Unincorporated Associations Identified on Schedule "A" attached hereto (collectively, "Defendants"), for alleged violations of the Lanham Act, 15 U.S.C. §§ 1114 and 1125(a).

The undersigned held a hearing on February 28, 2022, which was attended by counsel for Plaintiffs only.   During the hearing, Plaintiffs directed the undersigned to evidence supporting the Motion for Preliminary Injunction. Defendants have not formally responded to the Motion for Preliminary Injunction, nor have they made any appearance or filing in this case, either individually or through counsel.   Because Plaintiffs have satisfied the requirements for the issuance of a preliminary injunction, the Court finds that the Motion for Preliminary Injunction should be granted.

## I.   BACKGROUND

On January 5, 2022, Plaintiffs filed a Complaint (ECF No. 1) and thereafter its Amended Complaint (ECF No. 25) alleging that Defendants, which are the Individuals, Business Entities, and Unincorporated Associations Identified on Schedule "A", are "promoting, selling, offering for sale, and/or distributing goods within this district through various fully interaction [sic] commercial Internet websites and e-commerce stores." ("Am. Compl.") (ECF No. 25 at 1) Plaintiffs bring claims for federal trademark counterfeiting and infringement, false designation of

origin, common law unfair competition, and common law trademark infringement pursuant to 15 U.S.C. §§ 1114, 1116, 1125(a); The All Writs Act, 28 U.S.C. § 1651(a); and Florida common law. Am. Compl. ¶ 1. Accordingly, Plaintiffs invoke this Court's jurisdiction pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1338, 1367. Id.

Plaintiffs are all Swiss or German subsidiaries of The Swatch Group Ltd; each has its principal place of business abroad in either Switzerland or Germany. Am. Compl. at 1 n.1; id. ¶¶ 4–13. Plaintiffs are the registered owners of federally registered trademarks used in connection with the manufacture and distribution of their products. Id. ¶¶ 24, 30, 36, 42, 48, 54, 60, 66, 72, 78. Fifty-five (55) trademarks are at issue in this case: Omega – 20 trademarks; Blancpain – 3 trademarks; Longines – 5 trademarks; Glashütter – 1 trademark; Hamilton – 8 trademarks; Breguet – 2 trademarks; Rado – 3 trademarks; Tissot – 5 trademarks; Certina – 4 trademarks; Mido – 4 trademarks.[1] See id.

---

[1] The trademarks are as follows: Trademark No. 25,036, registered on July 24, 1894; Trademark No. 556,602, registered on March 25, 1952; Trademark No. 566,370, registered on November 4, 1952; Trademark No. 578,041, registered on July 28, 1953; Trademark No. 672,487, registered on January 13, 1959; Trademark No. 734,891, registered on July 24, 1962; Trademark No. 1,223,349, registered on January 11, 1983; Trademark No. 1,290,661, registered on August 21, 1984; Trademark No. 1,309,929, registered on December 18, 1984; Trademark No. 1,776,436, registered on June 15, 1993; Trademark No. 1,827,397, registered on March 22, 1994; Trademark No. 2,912,918, registered on December 21, 2004; Trademark No. 3,085,659, registered on April 25, 2006; Trademark No. 3,640,080, registered on June 16, 2009; Trademark No. 3,757,932, registered on March 9, 2010; Trademark No. 4,299,644, registered on March 12, 2013; Trademark No. 4,442,192, registered on December 3, 2013; Trademark No. 4,735,993, registered on May 12, 2015; Trademark No. 5,094,915, registered on December 6, 2016; Trademark No. 5,266,563, registered on August 15, 2017; Trademark No. 661,036, registered on April 29, 1958; Trademark No. 1,727,428, registered on October 27, 1992; Trademark No. 4,518,491, registered on June 4, 2013; Trademark No. 65,109, registered on September 10, 1907; Trademark No. 668,956, registered on October 28, 1958; Trademark No. 1,328,417, registered on April 2, 1985; Trademark No. 1,377,147, registered on January 7, 1986; Trademark No. 2,995,368, registered on September 13, 2005; Trademark No. 2,519,207, registered on December

Defendants are unknown individuals, business entities, or unincorporated associations who, according to Plaintiffs, use, or assist others in using, commercial internet websites and e‑ commerce stores operating under the domain names ("Subject Domain Names") and seller identification names ("Seller IDs") set forth in Schedule "A" attached to this Report. Plaintiffs contend that Defendants either reside in or operate in foreign jurisdictions, redistribute products from the same or similar sources in those locations, or ship their goods from the same or similar locations to shipping and fulfillment centers within the United States from those locations. Id. ¶ 17. According to Plaintiffs, Defendants are the "past and present controlling forces" behind the sale of the counterfeit and infringing products, and use aliases, including those listed in Schedule"A", in conjunction with the operation of their businesses. Id. ¶¶ 18–19.

Plaintiffs allege that Defendants—knowingly and intentionally, and without Plaintiffs' consent or authorization—promote and otherwise advertise, distribute,

---

18, 2001; Trademark No. 741,279, registered on November 27, 1962; Trademark No. 1,148,416, registered on March 17, 1981; Trademark No. 1,622,393, registered on November 13, 1990; Trademark No. 2,181,720, registered on August 18, 1998; Trademark No. 4,114,061, registered on March 20, 2012; Trademark No. 4,820,105, registered on September 29, 2015; Trademark No. 5,168,258, registered on March 21, 2017; Trademark No. 5,257,031, registered on August 1, 2017; Trademark No. 3,042,405, registered on January 10, 2006; Trademark No. 3,414,708, registered on April 22, 2008; Trademark No. 788,733, registered on April 27, 1965; Trademark No. 982,878, registered on April 30, 1974; Trademark No. 1,729,207, registered on November 3, 1992; Trademark No. 1,639,684, registered on April 2, 1991; Trademark No. 2,702,854, registered on April 1, 2003; Trademark No. 3,653,565, registered on July 14, 2009; Trademark No. 4,900,255, registered on February 16, 2016; Trademark No. 4,971,556, registered on June 7, 2016; Trademark No. 401,762, registered on June 8, 1943; Trademark No. 3,283,211, registered on August 21, 2007; Trademark No. 4,600,118, registered on September 9, 2014; Trademark No. 4,739,714, registered on May 19, 2015; Trademark No. 225,024, registered on March 8, 1927; Trademark No. 399,480, registered on January 12, 1943; Trademark No. 441,020, registered on October 19, 1948; Trademark No. 4,431,373, registered on November 12, 2013. Am. Compl. ¶¶ 24, 30, 36, 42, 48, 54, 60, 66, 72, 78.

sell or offer for sale, through their respective Subject Domain Names and Seller IDs, nongenuine goods of a substantially different quality from Plaintiffs' genuine goods, bearing or using counterfeit or confusingly similar infringing imitations of Plaintiffs' Trademarks. Id. ¶¶ 84–91; see also Declaration of Antoine Haller ("Haller Decl.") (ECF No. 8-2 at ¶¶ 104–108); Declaration of Kathleen Burns ("Burns Decl.") (ECF No. 8-3 at ¶ 4); Declaration of Virgilio Gigante ("Gigante Decl.") (ECF No. 17-1 at ¶ 3)

According to Plaintiffs, Defendants engage in their infringing and counterfeiting activities through the operation of internet-based e-commerce stores operating under the Subject Domain Names and Seller IDs. Specifically, Plaintiffs claim that Defendants use Plaintiffs' Trademarks to attract and direct online customers to Defendants' websites and e-commerce stores where they conduct this infringing activity. Am. Compl. ¶¶ 84–85. Plaintiffs claim that Defendants' sell their counterfeit goods with the knowledge and intent that these goods will be mistaken for Plaintiffs' genuine goods despite Defendants knowing they are not authorized to use Plaintiffs' Trademarks. Id. ¶ 85. Plaintiffs contend that, although some Defendants may be physically acting independently of one another, they are properly deemed as acting in concert because the combined force of their actions "serves to multiply the harm caused to Plaintiffs." Id. ¶ 94. As Defendants are likely to transfer or secret their assets to avoid payment of a monetary judgment, should the Court enter one, Plaintiffs claim that they have no adequate remedy at law, are suffering irreparable injury, and have suffered substantial damages from Defendants'

infringing Plaintiffs' Trademarks. Id. ¶¶ 96–98. Accordingly, Plaintiffs seek wide-ranging injunctive relief. See id. ¶ 125.

Plaintiffs have retained Invisible Inc., a licensed private investigative firm, to (1) investigate the promotion and sale of counterfeit versions of Plaintiffs' products by Defendant Numbers 1–102, and (2) for Defendant Numbers 1–102, determine the payment account data for receipt of funds paid for the sale of counterfeit versions of Plaintiffs' branded merchandise through Defendant Numbers 1–102's Subject Domain Names and Seller IDs. Haller Decl. ¶ 105; Gigante Decl. ¶ 2; Burns Decl. ¶ 3. In addition, Plaintiffs' counsel has documented (1) the suspected sale of counterfeit versions of Plaintiffs' branded products by Defendant Numbers 103–108 and (2) the payment account data for receipt of funds paid for the sale of counterfeit versions of Plaintiffs' branded merchandise through Defendant Numbers 103–108's Seller IDs. Gigante Decl. ¶ 3.

Invisible Inc. and Plaintiffs' counsel accessed the websites operating under Defendants' Subject Domain Names and the e-commerce stores operating under Defendants' Seller IDs. Burns Decl. ¶ 4; Gigante Decl. ¶ 3. Invisible Inc. and Plaintiffs' counsel placed orders for various alleged counterfeit products from each of those Defendants. Burns Decl. ¶ 4; Gigante Decl. ¶ 3. Each purchase was processed online and, following the submission of the purchase orders, Invisible Inc. and Plaintiffs' counsel received information to finalize payment for the products ordered from Defendants via Defendants' respective payment accounts or payee, as identified in Schedule A of this Order. Burns Decl. ¶ 4; Gigante Decl. ¶ 3. Upon

receiving the information to finalize payment, the detailed web pages reflecting Plaintiffs' branded products ordered via Defendants' Subject Domain Names and Seller IDs were sent to Plaintiffs' representative, Antoine Haller ("Haller"), for inspection. Haller Decl. ¶ 106; Burns Decl. ¶ 4; Gigante Decl. ¶¶ 2–3. Haller, who is Plaintiffs' Anti-Counterfeiting Officer, asserts that he is trained to identify the distinctions between Plaintiffs' genuine branded merchandise and counterfeit copies of the same. Haller Decl. ¶ 3. Haller concluded that Defendants' products are non-genuine, unauthorized versions of Plaintiffs' branded products based on **(1)** a visual inspection of the websites, e-commerce stores, or detailed webpage captures reflecting Plaintiffs' branded products, **(2)** his personal knowledge that Plaintiffs do not conduct business with Defendants, and **(3)** the fact that Defendants were selling their items at prices far below those of Plaintiffs' genuine products. See id. ¶¶ 107–108.

On January 9, 2022, Plaintiffs filed an *Ex Parte* Application for Entry of Temporary Restraining Order, Preliminary Injunction, and Order Restraining Transfer of Assets (ECF No. 8). On February 17, 2022, the Honorable K. Michael Moore entered an Order dated February 16, 2022, granting Plaintiffs Omega, Blancpain, Longines, Glashütter, Hamilton, Rado, Tissot, Certina, and Mido's request for a Temporary Restraining Order (the "TRO"), temporarily restraining Defendants from infringing Plaintiffs' Trademarks at issue and referring this matter pursuant to 28 U.S.C. § 636 and the Magistrate Judge Rules of the Local Rules of the Southern District of Florida, to the undersigned to take all necessary

and proper action as required by law with respect to Plaintiffs' request for a preliminary injunction. (ECF No. 12).  On February 18, 2022, Plaintiffs filed an *Ex Parte* Motion to Join Montres Breguet S.A. in the *Ex Parte* Application for Entry of Temporary Restraining Order, Preliminary Injunction, and Order Restraining Transfer of Assets and the Court's Order Dated February 16, 2022. (ECF No. 15). On February 22, 2022, the Honorable K. Michael Moore entered an Order Supplementing Temporary Restraining Order and ordered that that the Court's February 16, 2022 Order (ECF No. 12) granting Plaintiffs' *Ex Parte* Application for Entry of Temporary Restraining Order, Preliminary Injunction, and Order Restraining Transfer of Assets shall apply to Plaintiff Montres Breguet S.A. and to Plaintiff Montres Breguet S.A.'s registered trademarks, as if the same are fully set forth within the Court's Order dated February 16, 2022. (ECF No. 19).  Pursuant to the Court's TRO, Plaintiffs properly served Defendants with a copy of the Complaint together with copies of the *Ex Parte* Application for Entry of Temporary Restraining Order, Preliminary Injunction, and Order Restraining Transfer of Assets, the Court's TRO, the Order Setting Preliminary Injunction Hearing, and all other pleadings and orders issued in this action, thereby providing notice and copies of all documents on file in this action. (ECF Nos. 23, 24).

## II.  LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 65(b), the Court may enter a preliminary injunction or a temporary restraining order. Fed. R. Civ. P. 65(b). To obtain a preliminary injunction, a party must demonstrate: "(1) a substantial

likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the non-movant; and (4) that entry of the relief would serve the public interest." Schiavo ex. rel Schindler v. Schiavo, 403 F.3d 1223, 1225–26 (11th Cir. 2005) (citation omitted).

## III.   DISCUSSION

The undersigned finds that Plaintiffs have made a sufficient showing warranting the entry of a preliminary injunction:

First, Plaintiffs have demonstrated a substantial likelihood of success on the merits. To prevail on a claim for trademark infringement Plaintiffs must show: **(1)** they have trademark rights in Plaintiffs' Trademarks; **(2)** Defendants' use of Plaintiffs' Trademarks is without authorization; and **(3)** Defendants' use of Plaintiffs' Trademarks is likely to cause confusion, mistake, or deception. See 15 U.S.C. § 1114(1); Commodores Ent. Corp. v. McClary, 879 F.3d 1114, 1130–31 (11th Cir. 2018) (quoting Tana v. Dantanna's, 611 F.3d 767, 773 (11th Cir. 2010)); see also Two Pesos, Inc. v. Taco Cabana, Inc., 505 U.S. 763, 780 (1992) (Stevens, J., concurring) (noting that federal courts are "in agreement that the test for liability is likelihood of confusion: . . . 'Whether we call the violation infringement, unfair competition or false designation of origin, the test is identical—is there a "likelihood of confusion?"'" (quoting New West Corp. v. NYM Co. of Cal., Inc., 595 F.2d 1194, 1201 (9th Cir. 1979)); Planetary Motion, Inc. v. Techsplosion, Inc., 261 F.3d 1188, 1193 n.4 (11th Cir. 2001) ("Courts may use an analysis of federal infringement

claims as a 'measuring stick' in evaluating the merits of state law claims of unfair competition."). Here, Plaintiffs have shown ownership of their trademark rights in Plaintiffs' Trademarks. See (ECF Nos. 1-2, 1-3, 1-4, 1-5, 1-6, 1-7, 1-8, 1-9, 1-10, 1-11). Further, Defendants do not have authorization to use Plaintiffs' Trademarks. See Haller Decl. ¶ 104. And, the evidence before the Court strongly suggests that consumers are likely to be confused by Defendants' advertisement, promotion, sale, offer for sale, or distribution of products bearing counterfeits, reproductions, or colorable imitations of Plaintiffs' Trademarks—Plaintiffs' evidence suggests that the products Defendants are selling and promoting are copies of Plaintiffs' products that bear copies of Plaintiffs' Trademarks. See Haller Decl. ¶¶ 106–108. Compare (ECF Nos. 1-2, 1-3, 1-4, 1-5, 1-6, 1-7, 1-8, 1-9, 1-10, 1-11), with (ECF Nos. 8-4, 8-6).

Second, Plaintiffs are likely to suffer immediate and irreparable injury in the absence of a preliminary injunction. "[A] sufficiently strong showing of likelihood of confusion [caused by trademark infringement] may by itself constitute a showing of . . . [a] substantial threat of irreparable harm." Ferrellgas Partners, L.P. v. Barrow, 143 F. App'x 180, 191 (11th Cir. 2005) (citation omitted) (alterations in original). Based on the evidence before the Court, there is a strong showing of a likelihood of confusion caused by Defendants' trademark infringement. Specifically, Defendants are advertising, offering to sell, and selling counterfeit goods identical in appearance to those sold by Plaintiffs, including goods bearing Plaintiffs' Trademarks. Haller Decl. ¶ 104; Burns Decl. ¶ 4; Gigante Decl. ¶ 3. Accordingly, the Court finds that there is a sufficiently strong showing that consumers may believe they are viewing

or purchasing genuine goods sold or authorized by Plaintiffs. Further, the Court finds that there is good cause to believe that consumers may be misled or confused by the quality of these products, and that Plaintiffs may suffer reputational harm as a result.

Third, the threatened injury to Plaintiffs outweighs the potential harm to Defendants. Plaintiffs aver that they have expended substantial time, money, and resources to develop the alleged quality, reputation, and goodwill associated with Plaintiffs Trademarks. Haller Decl. ¶¶ 8–11, 18–21, 28–31, 38–41, 48–51, 58–61, 68–71, 78–81, 88–91, 98–101. Defendants suffer no legitimate hardship because Defendants are not authorized to engage in their allegedly infringing activities. Therefore, the potential harm to Plaintiffs' reputation and goodwill as manufacturers of the infringed-upon goods outweighs the potential harm to Defendants of restraining Defendants' trade in these counterfeit goods.

Fourth, Plaintiffs argue that "[t]he public has an interest in not being misled as to the origin, source, or sponsorship of trademarked products." Mot. at 14 (citing Nailtiques Cosmetic Corp. v. Salon Sciences, Corp., No. 96-2709-CIV-NESBITT, 1997 WL 244746, at *5 (S.D. Fla. Jan. 10, 1997)). This Court agrees. See Heron Dev. Corp. v. Vacation Tours, Inc., No. 16-cv-20683, 2017 WL 2895921, at *9 (S.D. Fla. Apr. 13, 2017), report and recommendation adopted, No. 16-20683- CIV, 2017 WL 2901203 (S.D. Fla. May 26, 2017) (citation omitted).

Further, Plaintiffs request that the Court enter an order limiting the transfer of Defendants' allegedly unlawfully gained assets. Mot. at 16. Specifically, Plaintiffs

request that the Court enter an order restraining the transfer of all monies transmitted through PayPal and the ContextLogic platform, or any other financial institutions, for the benefit of any one or more of Defendants, and any other financial accounts tied thereto. Id.

Under 15 U.S.C. § 1117(a), Plaintiffs may be entitled to recover, as an equitable remedy, illegal profits gained through Defendants' distribution and sale of products bearing counterfeits or infringing upon Plaintiffs' Trademarks. See Levi Strauss & Co. v. Sunrise Int'l Trading, Inc., 51 F.3d 982, 987 (11th Cir. 1995). Requesting equitable relief "invokes the district court's inherent equitable powers to order preliminary relief, including an asset restraint, in order to assure the availability of permanent relief." Id. (citation omitted). Moreover, asset restraints can be particularly important where counterfeiters conduct their business entirely online and may be practically able to thwart adequate relief by transferring assets out of the reach of a plaintiff. Accordingly, the Court finds that there is good reason to believe Defendants will hide or transfer their allegedly ill-gotten assets beyond the jurisdiction of this Court unless those assets are restrained.

## IV.   CONCLUSION

Accordingly, it is RECOMMENDED that Plaintiffs' Motion for Preliminary Injunction (ECF No. 8) be GRANTED and a Preliminary Injunction be entered as follows:

1. Each Defendant, their officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with them

having notice of this Order are hereby restrained and enjoined until further Order of the Court:

a.  From manufacturing, importing, advertising, promoting, offering to sell, selling, distributing, or transferring any products bearing and/or using Plaintiffs' Trademarks, or any confusingly similar trademarks, other than those actually manufactured or distributed by Plaintiffs; and

b.  From secreting, concealing, destroying, selling off, transferring, or otherwise disposing of: (i) any products, not manufactured or distributed by Plaintiffs, bearing and/or using Plaintiffs' Trademarks, or any confusingly similar trademarks; (ii) any evidence relating to the manufacture, importation, sale, offer for sale, distribution, or transfer of any products bearing and/or using Plaintiffs' Trademarks, or any confusingly similar trademarks; or (iii) any assets or other financial accounts subject to this Order, including inventory assets, in the actual or constructive possession of, or owned, controlled, or held by, or subject to access by, any Defendant, including, but not limited to, any assets held by or on behalf of any Defendant.

2.  Each Defendant, their officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with them having notice of this Order shall immediately discontinue, until further

Order of this Court, the use of Plaintiffs' Trademarks, or any confusingly similar trademarks, on or in connection with all internet websites and e-commerce stores owned and operated, or controlled by them, including the internet websites and e-commerce stores operating under their Subject Domain Names and Seller IDs.

3. Each Defendant, their officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with them having notice of this Order shall immediately discontinue, until further Order of this Court, the use of Plaintiffs' Trademarks, or any confusingly similar trademarks, within domain name extensions, metatags or other markers within website source code, from use on any web page (including as the title of any web page), from any advertising links to other websites, from search engines' databases or cache memory, and any other form of use of such terms which is visible to a computer user or serves to direct computer searches to Internet websites and e-commerce registered, owned, or operated by any Defendant, including the internet websites and e-commerce stores operating under their Subject Domain Names and Seller IDs.

4. Each Defendant shall not transfer ownership of the internet-based e-commerce stores and internet websites operating under their Subject Domain Names and Seller IDs during the pendency of this case, or until further order of this Court.

5. Each Defendant shall continue to preserve copies of all computer files relating to the use of any of the internet websites and e-commerce stores operating under their Subject Domain Names and Seller IDs and shall take all steps necessary to retrieve computer files relating to the use of the internet websites and e-commerce stores operating under their Subject Domain Names and Seller IDs that may have been deleted before the entry of this Order.

6. Upon Plaintiffs' request, the privacy protection service for any of the Subject Domain Names for which the registrant uses such privacy protection service to conceal the registrant's identity and contact information is ordered to disclose, until further Order of this Court, to Plaintiffs the true identities and contact information of those registrants.

7. Upon receipt of notice of this Order, Defendants and all financial institutions, payment processors, banks, escrow services, money transmitters, or marketplace platforms, including but not limited to, PayPal, Inc. ("PayPal") and ContextLogic, Inc., which operates the Wish.com website ("ContextLogic"), and their related companies and affiliates, shall, to the extent not already done, (i) immediately identify all financial accounts and/or sub-accounts associated with the internet websites and e-commerce stores operating under the Subject Domain Names and Seller IDs, the PayPal accounts, store numbers, merchant identification numbers, infringing product numbers, and/or the e-mail

addresses identified on Schedule "A" attached to this Order, as well as any other accounts of the same customer(s); (ii) identify all other accounts which transfer funds into the same financial institution account(s), and/or any of the other financial accounts subject to this Order; (iii) restrain the transfer of all funds, as opposed to ongoing account activity, held or received for their benefit or to be transferred into their respective financial accounts, and any other financial accounts tied thereto; and (iv) immediately divert those restrained funds to a holding account for the trust of the Court.

8. Upon receipt of notice of this Order, Defendants and all financial institutions, payment processors, banks, escrow services, money transmitters, or marketplace platforms, including but not limited to PayPal and ContextLogic, and their related companies and affiliates, shall further, to the extent not already done, provide Plaintiffs' counsel with all data that details (i) an accounting of the total funds restrained and identify the financial account(s) and sub-account(s) which the restrained funds are related to, and (ii) the account transactions related to all funds transmitted into the financial account(s) and sub-account(s) which have been restrained. No funds restrained by this Order shall be transferred or surrendered by any financial institution, payment processor, bank, escrow service, money transmitter, or marketplace website, including but not limited to PayPal and ContextLogic, and their related companies and

affiliates for any purpose (other than in accordance with a chargeback made under their security interest in the funds) without the express authorization of this Court.

9.   Any Defendant or financial institution account holder subject to this Order may petition the Court to modify the asset restraint set out in this Order.

10. This Order shall apply to the Subject Domain Names and Seller IDs, associated websites and e-commerce stores, and any other domain names, websites, seller identification names, e-commerce stores, or financial accounts that are being used by Defendants to counterfeit Plaintiffs' Trademarks at issue in this action and/or unfairly compete with Plaintiffs.

11. This Order shall not apply to any Defendant or associated domain name or e-commerce store dismissed from this case or as to which Plaintiffs have withdrawn their request for a preliminary injunction.

12. Pursuant to 15 U.S.C. § 1116(d)(5)(D) and Federal Rule of Civil Procedure 65(c), Plaintiffs shall maintain its previously posted bond in the amount of Ten Thousand Dollars and Zero Cents ($10,000.00), as payment of damages to which Defendants may be entitled for a wrongful injunction or restraint, during the pendency of this action, or until further Order of this Court. In the Court's discretion, the bond may be subject to increase should the amount of funds seized exceed $10,000.00.

13. In addition, to provide further notice of this proceeding, and all other pleadings, orders, and documents filed in this case, the owners, operators,

and/or administrators of the internet marketplace websites, messaging services, and/or financial institutions, payment processors, banks, escrow services, money transmitters, and marketplace platforms, including but not limited to PayPal and ContextLogic, and their related companies and affiliates shall, at Plaintiffs' request, provide Plaintiffs' counsel with any e-mail address known to be associated with Defendants' respective SubjectDomain Names and Seller IDs.

14. This Order shall remain in effect during the pendency of this action, or until further date as set by the Court or stipulated by the parties.

The parties will have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with the Honorable K. Michael Moore, United States Chief District Judge. Failure to file objections timely shall bar the parties from a de novo determination by the Chief District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained therein, except upon grounds of plain error if necessary in the interest of justice. See 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140, 149 (1985); Henley v. Johnson, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1.

DONE AND SUBMITTED at Fort Lauderdale, Florida, this 28th day of  Febuary 2022.

_____
LURANA S. SNOW
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

All Counsel of Record

SCHEDULE "A"
DEFENDANTS BY NUMBER, SUBJECT DOMAIN NAME, SELLER ID,
FINANCIAL ACCOUNT INFORMATION INFRINGING PRODUCT NUMBER,
AND E-MAIL

| Defendant Number | Defendant / Subject Domain Name / Seller ID | Financial Account Information: PayPal Account / Payee / Store Number | PayPal Merchant ID | Infringing Product Number / Additional Email |
|---|---|---|---|---|
| 1 | azmsell.com | zhuoqimaoyi@outlook.com | LTXUJUHU5VZBS | sminiyoni689@yahoo.com |
| 2 | anysandals.com | 312113215@qq.com | WRFJ8WG33Y9XN | Service@popstars.shop |
| 2 | envirolike.com | Youtong | WRFJ8WG33Y9XN | |
| 2 | hostcloth.com | Youtong | WRFJ8WG33Y9XN | |
| 2 | renewdream.com | Youtong | WRFJ8WG33Y9XN | |
| 3 | gsjxzr.com | 惠州市天佑网络科技有限责任公司 | ACS28DDASVZJJ | Elfre.Gugliuzz@gmx.com lvv934805778@outlook.com |
| 4 | 25y0s46t | 5f7be8fe697dd819e9b4606d | | 601e56f5347a245ed67ada9b |
| 5 | BernardMartinez | 5e93d5c66dc9798dc0196037 | | 61691b281046585f7830c28d |
| 6 | Bertha D Coleman | 5e92bc912522bc2dc0ca01e8 | | 60bf14d17e572afd1c143de9 |
| 7 | BettieJudson | 5e93da4d29e78658c08842c6 | | 60f791b901200a27977fab72 |
| 8 | Bookre | 60fdfa87410c05d1a9e258bc | | 6145bf5d034977fac3230520 |
| 9 | Brandon S Fellows | 5e9d2cbd2aad6eb98ae4797a | | 6089625ea7562709f90b15ee |
| 10 | Charles R Harrelson | 5e9bc966da2ff29e1742b9ab | | 60b729745045e0c74362a45d |
| 11 | CharlesGallimore | 5e93e2e02522bc2dc0cbc8e5 | | 612256dad1fc452e3c904cb6 |
| 12 | chenjianhong11223 | 5f3a1d760a076c8aa3ffdae3 | | 60f5396564bd45f55e8b7b1a |
| 13 | chenqinglong76073 | 616535b70758f2c86eb030b3 | | 6172b23eeac044da3a45dffd |
| 14 | chenshengwu75851 | 6163d8750d52e82adc75eb52 | | 6171971fea04a94a37792ba6 |

| 15 | ChundikejAu | 5e857d558fb681005095c2c6 | | 60b06502cab1e8d69d9570ae |
|----|----|----|----|----|
| 16 | DallCan | 60fdb1f3ab831d5203cf61f6 | | 6145b80c7e05e7a84ebc84ec |
| 17 | David S Denzer | 5e9bc3d729e7867cbe3068c1 | | 607d4d1d7ba6af63cfcb6477 |
| 18 | Deprediduo | 60bee43ca04ad60a804c71eb | | 61284abce9a3cd2dbca244bc |
| 19 | Dereep | 6018a20336019707feb8b26f | | 60ea40ee227d899d7306baf2 |
| 20 | domiciliation | 5fd5b19b470620816d206ba6 | | 60dc7a521002f7200186c93e |
| 21 | Donasmcdonnell | 60fafaa0b181bce3540e2ab4 | | 614d677c9e73a2845ca7c337 |
| 22 | dongbenliang34745 | 60b3273acafa4df753a7dfad | | 60c993e4b22a1b8f8553d483 |
| 23 | dongyan07383 | 60a0915a941c2c4a41470a89 | | 61480b526488ebc83c04ad2b |
| 24 | Dulces Diabólicos | 60e37632708c3e482f0db3ca | | 616c5111e7ef840198964dcb |
| 25 | e3abpe0u | 5f7ed1cb87bffc2462fd2935 | | 61447e637ce97207fa67cdbf |
| 26 | Edward Kotykuf-A20 | 6131e82c41200c31beb963c2 | | 6147c14e94e049e3b6d11fa3 |
| 27 | elanishop19 | 5f63a8a3a224a3b1678db156 | | 5fd81d856f5fc87950c2a390 |
| 28 | Elizabeth F Silvestri | 5ea2948014e2a4627b28c9cd | | 60d927c68b1b698b25659cc3 |
| 29 | Emily B | 60ca4ad56d3d742ef50603cb | | 61012e753d8e92e04cd6bd7a |
| 30 | Eugene T Weymouth | 5e9bc214ef1dcee0c7eb3ccc | | 60b729389db945bd5dfb1004 60cd90e683001a27881c7c28 |
| 31 | fuchanglan86373 | 612847d17b10dff81cda8cc5 | | 615d2bdd2bb3d2f264266297 |
| 32 | gazous | 5fce0c1068d20ee496a1ace2 | | 610a360698a63207e137e8e6 |
| 33 | George's Flower Shop | 5f735c68ded26e0718efeac5 | | 5fd6db150872c2205aff3e8f |
| 34 | Giv | 60edaaa4de8094c50080884f | | 61432854562d3e05acbdf6dd |
| 35 | Gladys J Broadhead | 5e93bf4a7fbade069fbd946c | | 603e04c1c3040c0d4936daf5 |

| 36 | Glent Playstore | 60de4b8fc171c800545a5782 | | 6151ee8b443a6e6cd1cd9d5f |
|----|----|----|----|----|
| 37 | haoxinmiao1838 | 610cdf439743c69b43e9c0f9 | | 611bc86208404b7c1c49a5d4 |
| 38 | hetujiao3589 | 614fdd6f25f5703f67c87d20 | | 616e75bd16ab91e97bc1a1ae |
| 39 | hongxiuli76354 | 6163df137e2b492f95e6bcd1 | | 6171a685ed448515dfb369e7 |
| 40 | HONMIN | 58a304d75d93de51bece26c1 | | 607d32410ac5e81101dd509c |
| 41 | huliuxiang8471 | 61502f0fa4ab48d5f9c8c31c | | 6154224b98e1c4f993d7a07e |
| 42 | James J Hogan | 5e9d4b54a677778158eac61b | | 60dd38b8b6292a61a8e44c73 |
| 43 | JeepTienda | 5fbffe3310cec632f367338b | | 609b84f1020151d2d7cbed99 |
| 44 | JEM Daily Shop Online | 60054a4018d5545904213ef9 | | 608ceb5b2d82d4efb9da23cc |
| 45 | jiangshiliang0932 | 6127010c6158137fb79a9e64 | | 61504ace09803c31a4d45ed7 |
| 46 | jiangzuoqiong76273 | 61651d4ae1ff56aca1509f07 | | 6172ba3917afee5717114781 |
| 47 | jiayonglei5028 | 60bb0cc0baced54b0be35f02 | | 610f6f905d247453d3e71d43 |
| 48 | John R Jones | 5e9413f41a25ab6300bc46b7 | | 60b06597d51bc0b98190a806 |
| 49 | JoshuaWhiteman | 5e93e634bdebf425a5041e7d | | 60ff8341cea02e40533deae1 |
| 50 | Kelly B Barrett | 5e9414a4646cd44d97988c36 | | 6141be6c6a0dafd6e204aa05 |
| 51 | KevinBruno | 5e93fd39bdebf43702041ea6 | | 60b6ed13a9fe7b31ee284578 |
| 52 | KOKETAS LINDA | 60fae98d32ad427a2ae7e863 | | 61654484bc6c85117944ebdc |
| 53 | lhoib9xia | 5f3cb8f2e09a35e178906497 | | 60bf07b0d51daad7784a3661 |
| 54 | liaohui3905 | 60bb1e29f69e465f501e95a1 | | 610eb9ef7de69b06bd5e1186 |
| 55 | lihaisi0827 | 61274a15ba264f9ffd6c22b4 | | 615043d01c8d2657a76f16cf |
| 56 | lihengzhuo60826 | 60b3399e36badc19c002c3fa | | 60e69c1c514f57852449eb3a |
| 57 | Lina M Cannon | 5e840e37cb11ecbac2a1ee34 | | 60dd38a6787e915429a713a7 |

| 58 | liyuxiang1564 | 60a31ba43808c21f85f42f82 | | 60f906af4d8c2953720e57ba |
| 59 | lllllllhgghbnnk | 5f09625929e7864462b2a73a | | 608e83c71a243fa22757cc63 |
| 60 | luminometer | 5fd59686c4fa1b5f5d6300e5 | | 609e38c1a67b81799e82f7e5 |
| 61 | Lyndell | 5ff7c356fd0da5076cba73f0 | | 608016832c450d684562943d |
| 62 | mambulul | 5fcd01e51efa44feea5387e5 | | 60a375614df9ec9d0745eff2 |
| 63 | MarkMuniz | 5e93e4c075a1b220b95d1889 | | 60fc291a0fe549014bfec6fb |
| 64 | mayanping76355 | 6163dad18eb2a0387075ea26 | | 6171aa09ab8e4acd2616bd3f |
| 65 | nieyujiang | 5f4def49bebf5a8e92394f58 | | 60404ac1f1f07e654d0a04e7 |
| 66 | Opera Tower | 5fc5326eba4411efb39ea5ec | | 60c181c93f41a93fbb3e2542 |
| 67 | operadora | 5fd2693520dcdf228ae19fbc | | 6050a301e26b2362839bc2ac |
| 68 | OuyeyongdRz | 5e841c0ebc418d132e0e4ff8 | | 60617aba15e17d90381b9ed4 |
| 69 | PatriciaCasillas | 5e93d38846be6a249edf2171 | | 6160657ac1007bbdaba3c938 |
| 70 | PearlOwens | 5e93d6916dc979220f160e35 | | 608128acf2289ae660592707 |
| 71 | Ricky R Jones | 5e941c28a93eff7b404bde95 | | 60bd8dd280ea9d921259a265 |
| 72 | SamuelNettles | 5e93d5056dc979204e1611e8 | | 616068007d8f662be342317e |
| 73 | Saydig | 60fce64cfca9837406c3cae3 | | 6146c55d641792babc426fb9 |
| 74 | sdoihu | 5fc5fb8a66a99026d141ed9a | | 60b09e19ba67dc42661fcc85 |
| 75 | Shanirea | 5ff7c8af52ec2a0a32197dcf | | 60951496e06ffb4794852ad0 |
| 76 | shellerbi | 5fdb145697bb8e2e8cfcfd66 | | 60c181b922eb014efeca0b78 |
| 77 | smith/marketing | 5f65874d69f76d2494f5fd83 | | 60b86785b5106082a35e8076 |
| 78 | Stephen G Vernon | 5e952629cb74c929d74152cc | | 605603e896b5b2350a5dcd83 |
| 79 | thewall | 5fc81255df0823789d5b9a25 | | 60c184fe85fdb056c0517b72 |

| 80 | Tienda Solex | 60fcdf9cce53a34e402f6b2c | | 614d63711939a9ff54e9ee bd |
|---|---|---|---|---|
| 81 | Tiny Tear | 60cc7bb5ec88a1d2b3d2ae14 | | 61289861b17c4424d01fcd e5 |
| 82 | Tocmok | 60e3db76ffd96e8390c51065 | | 616066e5cdc11b258c90de f0 |
| 83 | Totall | 60cd55698b519216cfc4c662 | | 611b89948bbd43305f292 dfd |
| 84 | tpcj2mw1 | 5f7ed42779c754c1ec71961a | | 600145c8cb4b8be17fd2e2 04 |
| 85 | treaty | 5fdb68ed85eca0f0051a203b | | 60a32e3f49ac5983aaea37 59 |
| 86 | TyroneJohnson | 5e93d4404186780d00cabf4f | | 60a3ae64d02d7efdabc8fa ec |
| 87 | Vicsalme | 5fa1503f2df7f0f732938e11 | | 60449ac729dcbe23dc043e ba |
| 88 | wangtianrong | 5b3042cec6025e3c5c3daf2f | | 614ac75ac8491d38d451e d31 |
| 89 | wangyang9501 | 60c1cb97795130f26265a29e | | 612267aad0845c5996f354 c8 |
| 90 | wangyongliang766 49 | 6163d9065f03f567510ef7f2 | | 6171b76e9d0063ce35fd64 8c |
| 91 | wangzhehao3126 | 60a35f4c94808a05d3fff3de | | 60ab56ac604aa7edc7761e b8 |
| 92 | wjiajuhay | 5f3e446d3c7460dd789220db | | 5faa2f16b2af6ecbcbe4f7e e |
| 93 | xuechunyan45592 | 60b2f3df36badcbd4bffd474 | | 6110c0cdd9998e7b7dc72b a7 |
| 94 | xueyuheng0071 | 60b34da7d7ef45184d910e21 | | 611bce7f6bc32e895e46ff8 6 |
| 95 | xuzhengyi23775 | 6098e04ebed5aa179ae97b3a | | 615401210642deea4dd5d 861 |
| 96 | yangliyan76267 | 6163cd699d982c6ab047d784 | | 61724327850207931de7b cc7 |
| 97 | zhangchengyang66 8 | 60e2b4ca708c3e40c40d8d63 | | 6128ec1ac43cafbd48de92 3b |
| 98 | zhanghuenghao | 60b8676f7986b4824c1cbf34 | | 5f4dc8784db01800427229 ac |
| 99 | zhangxishu75886 | 61629fc15520718a06603353 | | 6172c39437b1c5d07992f4 89 |
| 100 | zhangzhenzhen367 1 | 6151434da6f893b78f5834d5 | | 616e80d778ab9c1535180 ade |
| 101 | ZhilunshiuVd | 5e86eadf6fe69af060aa76c0 | | 60c8ae29ccc1e8480802fd b8 |

| 102 | zhuguodong03541 | 6097a96ce7bace55979da007 | | 6163ce98af91663d1f924558 |
| 103 | Densderus | 5fe0c304760a6ce1688006d0 | | 60d44ce5d785862856de7269 |
| 104 | hukunfeng5717 | 60a3630020b63f07903ac84a | | 60c44edeba71edb0b987f796 |
| 105 | Kimberly McCamants | 607420cc20a354391d72a962 | | 60d611ded80cd326e3e5d6e7 |
| 106 | LilossFet | 5fd9612c28b63f004538a079 | | 60e9c9fe8a30b0ca0c9ffefd |
| 107 | matteo88re | 604f8d75ea61965599a941c9 | | 60d61256ab88f318c840083f |
| 108 | Yoyimotors | 5fd8d44761f56ca1a5127831 | | 6067e304d9af57a601569cad |